IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LARRY CALLIES,                        §
                                      §
      Plaintiff,                      §
                                      §
v.                                    §        CIVIL ACTION NO. H-12-3710
                                      §
PATRICK R. DONAHOE,                   §
POSTMASTER GENERAL, UNITED            §
STATES POSTAL SERVICE,                §
                                      §
      Defendant.                      §

MEMORANDUM & ORDER

Pending is Defendant Patrick R. Donahoe, Postmaster General, United States Postal Service's Motion for Summary Judgment (Document No. 21).   After carefully considering the motion, response, reply, and applicable law, the Court concludes as follows.

I.   Background

Plaintiff Larry Callies ("Plaintiff"), a black man who is 61 years old,[1] was a letter carrier for the United States Postal Service ("USPS") for 34 years until his retirement on March 1, 2010.[2]  Plaintiff was assigned to the Sugarland Post Office in Sugarland, Texas.[3]

---

[1] Document No. 21, ex. 4 at 7-8.

[2] Document No. 1 at 2 (Orig. Compl.); Document No. 21, ex. 9.

[3] Document No. 1 at 2.

On March 17, 2008, USPS supervisor Philip Philipose ("Philipose") instructed Plaintiff to carry additional deliveries for thirty minutes.[4]   After Plaintiff refused, Sugar Land Postmaster Debora Duplechain ("Duplechain") ordered Plaintiff to follow Philipose's order.[5]   Plaintiff once again refused, and was issued a 14-day suspension on April 8, 2008 for repeated failure to follow instructions.[6]   The suspension did not result in a loss of time or pay.[7]

On April 1, 2009 at approximately 5:09 p.m., Hildridge Newhouse ("Newhouse"), Postmaster and Officer-in-Charge at the Missouri City, Texas Post Office, observed Plaintiff's postal vehicle parked on the side of a building.[8]   Newhouse pulled up to the vehicle, identified herself and showed her badge, then asked Plaintiff for his name and what he was doing.[9]   Plaintiff responded that his name was Larry and that he was on a 10-minute break.[10]   Newhouse then asked Plaintiff to open the back of the vehicle, and

------

[4] Document No. 21, ex. 1 at 00098-99.

[5] Id., ex. 1 at 00098-99.

[6] Id., ex. 1 at 00098-99.

[7] Id., ex. 1 at 00098-99.

[8] Id., ex. 1 at 00218-19, 00250.

[9] Id., ex. 1 at 00218-19, 00250.

[10] Id., ex. 1 at 00218, 00250.

2

observed that there was no mail to be delivered.[11]  The next day, Newhouse emailed Duplechain and recounted her observations.[12]

On May 6, 2009, USPS Supervisor Mathew Scaria ("Scaria") issued Plaintiff a fourteen-day suspension for failure to follow instructions and for taking an unauthorized break.[13]  The written notice of suspension explained that Plaintiff was working overtime when he was approached by Newhouse on April 1, and that carriers working overtime are not entitled to breaks.[14]  Furthermore, the notice stated that the "Carriers Handbook M-41" required Plaintiff to return to the delivery unit immediately upon completion of his assigned duties and promptly clock in, and that Plaintiff did not return to the station until 5:38 p.m. that day, and did not end his tour until 5:42 p.m.[15]  The suspension was a "paper suspension" and resulted in no time off.[16]

On July 8, 2009, Plaintiff submitted two doctors' notes to USPS management.[17]  The note from one physician stated that

---

[11] <u>Id.</u>, ex. 1 at 00218, 00250.  Newhouse observed that there was "a priority box and a tub of collection mail" in the back of Plaintiff's vehicle, but "NO MAIL to be delivered."  <u>Id.</u>, ex. 1 at 00250.

[12] <u>Id.</u>, ex. 1 at 00250.

[13] <u>Id.</u>, ex. 1 at 00066-67.

[14] <u>Id.</u>, ex. 1 at 00066.

[15] <u>Id.</u>, ex. 1 at 00066.

[16] <u>Id.</u>, ex. 1 at 00066-67.

[17] <u>Id.</u>, ex. 1 at 00123; <u>id.</u>, ex. 4 at 102-03.

Plaintiff has spasmodic dysphonia,[18] a condition which Plaintiff says causes his vocal cords to spasm and lock up, making it difficult to speak.[19]  That note advised that, "[i]f possible no more than 8 hours shifts could help the condition."[20]  The note from the other doctor, in family practice at a separate clinic, was on a "Release to Work/School Permit" form and released Plaintiff to work "no more than 8 hrs a day," but contained no diagnosis or explanation for the limitation.[21]

On August 5, 2009, Plaintiff worked overtime.[22]  Plaintiff contends that when asked to work overtime, he always objected because he was not on the Overtime Desired List ("ODL") and because he had submitted doctors' notes.[23]

On August 7, 2009, supervisor Andre Felder ("Felder") asked Plaintiff to have his doctor fill out paperwork for a light duty assignment which would formalize Plaintiff's request for accommodation.[24]  Plaintiff refused, believing that filling out the paperwork would be tantamount to falsifying a document because it

---

[18] Id., ex. 1 at 00123.

[19] Id., ex. 1 at 00113.

[20] Id., ex. 1 at 00123.

[21] Id., ex. 1 at 00123.

[22] Id., ex. 1 at 00193, 00231.

[23] Id., ex. 4 at 113.

[24] Id., ex. 1 at 00194-95, 00230, 00259-64; id., ex. 4 at 115-19.

would deem him an "ill and injured" employee.[25]   Under his interpretation of the union agreement, such employees were considered part-time regular employees and Plaintiff was a full-time regular.[26]

On August 10, 2009, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint with the USPS, alleging that Duplechain and Scaria retaliated against him for his "[p]rior EEO activity" when they issued the May 2009 suspension.[27]   USPS began an investigation into Plaintiff's allegations.[28]

On the morning of September 8, 2009, Felder informed Plaintiff that he had to work overtime that afternoon due to high mail volume.[29]   Plaintiff asked to be limited to an eight-hour day, as he believed his doctor had prescribed.[30]   Plaintiff also objected that he was not on the ODL.[31]   Felder and Plaintiff briefly

———————————————

[25] Id., ex. 1 at 00117, 259; id., ex. 4 at 122.

[26] Id., ex. 1 at 00117, 00259; id., ex. 4 at 122.

[27] Id., ex. 1 at 00043, 00045.   Plaintiff's EEO complaint did not specify what his prior EEO activity involved, or when it occurred.   See id.

[28] Id., ex. 1 at 00145-46, 00344.

[29] Id., ex. 1 at 00106, 00232; id., ex. 5 ¶ 3.   Felder avers that, given the circumstances, he believed that he was entitled, under the terms of a local memorandum of understanding between USPS and the union, to ask any available letter carrier to work overtime, regardless of whether he or she was on the ODL.   Id., ex. 5 ¶ 3.

[30] Id., ex. 1 at 00106, 00115, 00232.

[31] Id., ex. 1 at 00232.

discussed the matter but were unable to agree, and Plaintiff left for his regular route.[32]

When Plaintiff returned from his route that afternoon, Felder again told him that he needed to work overtime.[33]   Plaintiff responded that he was not on the ODL and again referred to his medical documentation, that is, the two doctors' notes.[34]   Felder ordered Plaintiff to work the overtime, and Plaintiff walked away.[35] Duplechain then approached Plaintiff and instructed him to complete the overtime assignment.[36]   Rather than comply, Plaintiff clocked out and went home.[37]   USPS contends that Plaintiff's actions were contrary to instructions in its Employee and Labor Relations Manual requiring employees to carry out orders even if they find them objectionable.[38]

---

[32] Id., ex. 1 at 00106, 00232; id., ex. 4 at 128.

[33] Id., ex. 1 at 00106, 00232; id., ex. 4 at 129.

[34] Id., ex. 1 at 00106, 00232; id., ex. 4 at 129-130.

[35] Id., ex. 1 at 00193.

[36] Id., ex. 1 at 00193.   Duplechain states that she heard Plaintiff tell Felder that he was not on the ODL, but did not hear him mention his medical documentation. Id., ex. 1 at 00193, 00195. Plaintiff alleges he informed Duplechain of his medical documentation, but that neither she nor Felder asked to see it. Id., ex. 1 at 00106.

[37] Id., ex. 1 at 00106, 00193, 00232; id., ex. 4 at 129-130.

[38] Id., ex. 4 at ex. 9 § 665.15 ("Employees must obey the instructions of their supervisors.  If an employee has reason to question the propriety of a supervisor's order, the individual must nevertheless carry out the order and may immediately file a protest in writing to the official in charge of the installation or may

6

The next day, Plaintiff returned to work and worked overtime.[39] On September 21, 2009, Felder issued Plaintiff a Notice of Removal for failure to follow instructions, discharging Plaintiff effective October 30, 2009.[40]  The Notice stated that Plaintiff's 2008 and 2009 suspensions were considered in deciding on his removal.[41]

Defendant alleges that in late September 2009, Plaintiff filed a grievance regarding the Notice of Removal.[42]  The grievance was referred to an arbitrator, who, after a hearing, on March 19, 2010, issued his award.[43]  He found that Plaintiff had failed to follow instructions, but rescinded the removal and reinstated Plaintiff because USPS had neglected to follow protocols in Article 8 of the union agreement requiring USPS first to use carriers from the ODL for overtime assignments, and, if it is necessary to use non-ODL carriers, to assign the overtime on a rotating basis starting with

---

appeal through official channels.").

[39] Id., ex. 1 at 00193, 00231.   In the arbitration award addressing Plaintiff's grievance, the union's position is that Plaintiff did not work overtime on this day, but "[r]ather, he participated in a pre-disciplinary interview for about 30 minutes that day and then carried his route for 8 hours." Id., ex. 6 at 4.

[40] Id., ex. 1 at 00253-55.  The letter was marked as received on September 23, 2009.  Id., ex. 1 at 00255.

[41] Id., ex. 1 at 00254.

[42] Document No. 21 at 5.

[43] Id., ex. 6.

the junior employee.[44]  Before the Arbitrator ruled, Plaintiff had applied for retirement on December 21, 2009 and elected that his retirement become effective on March 1, 2010.[45]  Thus, despite the arbitrator's ruling, Plaintiff did not return to work from his voluntary retirement.[46]

On October 26, 2009, Plaintiff amended his EEO complaint to include allegations of race discrimination, disability discrimination, and retaliation based on the Notice of Removal.[47] On October 13, 2010, a United States Equal Employment Opportunity Commission ("EEOC") Administrative Judge issued an order finding no discrimination or retaliation.[48]  Later that month, USPS issued a Notice of Final Action implementing the Administrative Judge's order.[49]  Plaintiff appealed to the EEOC, and the EEOC affirmed the Administrative Judge's opinion.[50]

---

[44] _Id._, ex. 6 at 4-7.  The arbitrator also ordered that Plaintiff be "made whole" and that the reinstatement be accompanied by a "last chance agreement," which would be effective from the date of his reinstatement and continue for one calendar year. _Id._, ex. 6 at 6-7.

[45] _Id._, ex. 9.

[46] _Id._, ex. 18 ¶ 3.

[47] _Id._, ex. 1 at 00068-78.  Plaintiff alleged that he was retaliated against for EEO activity that he engaged in on November 9, 2006 and September 26, 2009.  _Id._, ex. 1 at 00068.

[48] _Id._, ex. 12.

[49] _Id._, ex. 13.

[50] _Id._, exs. 14, 15.

This lawsuit followed.  Plaintiff now claims age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), and race discrimination, disability discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981.[51]  He also makes a claim under the Employee Retirement Income Security Act ("ERISA"), arguing that Defendant fired him with the intent to deprive him of his retirement benefits.[52]  Defendant moves for summary judgment.[53]

## II.  Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence

---

[51] Document No. 1.

[52] Id.

[53] Document No. 21.

of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course

would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at
2513.

III.   <u>Analysis</u>

A.   <u>Age Discrimination</u>

Plaintiff alleges that USPS "involuntarily terminated
plaintiff's employment, and subsequently, replaced plaintiff with
a much **younger person**," in violation of the ADEA.[54] *See* 29 U.S.C.
§ 623(a)(1) ("It shall be unlawful for an employer . . . to
discharge any individual or otherwise discriminate against any
individual with respect to his compensation, terms, conditions, or
privileges of employment, because of such individual's age.").
Before filing suit under the ADEA, a plaintiff must either file a
complaint with the EEO division of their agency or give notice of
intent to sue to the EEOC. <u>Allard v. Holder</u>, 494 F. App'x 428, 431
(5th Cir. 2012) (citing 29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201).
Because Plaintiff chose to pursue an administrative remedy, he was
required to exhaust his administrative remedies with respect to all
claims before filing a civil action. *See* <u>Hill v. Dep't of Veterans</u>
<u>Affairs</u>, No. 08-60532, 2009 WL 348767, at *3 (5th Cir. Feb. 12,
2009). *See also* <u>Smith v. O'Keefe</u>, Civ. A. No. H-03-5900, 2006 WL
2167716, at *6 (S.D. Tex. July 31, 2006) ("Once an employee has
chosen the agency in which he wishes to adjudicate his claims . . .

---

[54] Document No. 1 at 3 (emphasis in original).

11

he is required to bring all claims relevant to his discharge in that proceeding.") (quoting German v. Pena, 88 F. Supp. 2d 222, 225 (S.D.N.Y. 2000)).   "When a claim was not formally raised in the administrative proceedings, the exhaustion requirement may still be satisfied as long as an administrative investigation of the claim not raised could 'reasonably be expected to grow out of' the charges actually raised."   Hill, 2009 WL 348767, at *3  (quoting Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006)).

In his August 2009 EEO Complaint, Plaintiff checked only the box marked "Retaliation" when asked to identify the "Type of Discrimination You Are Alleging."[55]   The narrative explanation of his claim detailed his interaction with Newhouse and his 14-day suspension, but made no mention of age discrimination.[56]   In his October 26, 2009 amendment, Plaintiff listed "RACE AND PHYSICAL DISABILITY AND RETALIATION" as alleged "factors of Discrimination," and described the events of September 8, 2009, but again asserted

---

[55] Document No. 21, ex. 1 at 00043.

[56] See id., ex. 1 at 00043 ("On April 7, 2009 I was issued a 14 day suspension by Phillip Phillipost at 3:15 p.m. on April 7, 2009 with witness Andre Felden.   The suspension said that I was observed by Post Master Hildridge Newhouse.   The EEO ADR specialist Amaryllis Lee said Newhouse was an Officer-in-charge.   Newhouse said I was on a 10-minute break.   EEO ADR specialist stated I was on a break.   I was on a bathroom break.   Newhouse also stated there was a priority box and a tub of raw mail in the 14-day suspension. EEO ADR specialist stated she saw one parcel that was not for delivery but was coming back to the station.   Matthew told me in the presence of witnesses that Debora Duplechain asked him to issue the suspension.").

no claims based on his age.[57]   Because neither of Plaintiff's EEO complaints mentions age, or any information from which an investigation concerning age discrimination could reasonably be expected to grow, Plaintiff's ADEA claim is dismissed without prejudice for failure to exhaust administrative remedies. *See* King v. Life School, 809 F. Supp. 2d 572, 580 (N.D. Tex. 2011) (plaintiff failed to exhaust her age discrimination claim where she checked only the box for race on her EEOC charge and failed to make any allegations related to age discrimination); Lee v. Kroger, 901 F. Supp. 1218, 1224 (S.D. Tex. 1995) (plaintiff precluded from maintaining racial discrimination and harassment claims where he checked the box labeled "Retaliation" on his EEOC charge, while leaving blank the box labeled "Race," and did not allege facts indicating he was complaining of racial discrimination or harassment).

Alternatively, even if Plaintiff was not required to exhaust his ADEA claims in his EEO complaint process, his putative ADEA claim is barred because there is no evidence that Plaintiff filed with the EEOC the requisite notice of intent to sue at least 30

---

[57] Id., ex. 1 at 00068 ("On September 8, 2009, Andre Felder and Debra Duplechain, Postmaster, charged me with failure to follow instructions from my supervisor by not carrying the assigned split on route #7826.   On that same day, a WHITE carrier, Debbie Sardelich, who IS on the overtime desired list was allowed to clock out after eight hours.   I, a BLACK carrier, who is NOT on the overtime desired list, and who has medical documentation, was attempted to be FORCED to work overtime.").

days before bringing this action. *See* 29 U.S.C. § 633a(d) (allowing employee to file ADEA suit without first pursuing administrative remedies but requiring 30 days' notice to the EEOC of intent to sue); 29 C.F.R. § 1614.201(a) (same).

B.   <u>Disability Discrimination</u>

Plaintiff's Complaint suggests that he was discriminated against on the basis of his spasmodic dysphonia,[58] and alleges that USPS failed to provide him with reasonable accommodations.[59]  Such claims are not actionable under Title VII.  *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination because of an individual's "race, color, religion, sex, or national origin.").  Thus, the Court will construe Plaintiff's claims as arising under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, ("the Rehabilitation Act"), although Plaintiff has not alleged reliance on that Act in his pleadings.  Nonetheless, the Rehabilitation Act "constitutes the exclusive remedy for a federal employee alleging

---

[58] Document No. 1 at 7 (Under the heading "Section 1981 Claim/Title VII Claim," Plaintiff writes that he "was diagnosed with a certain medical condition known as spasmodic dysphonia. This condition is aggravated by stress."). *See also* <u>id.</u> at 8 ("Defendant and its management employees were aware of plaintiff's health condition and the factors that would aggravate plaintiff's condition. Defendant's management employees willfully, knowingly or recklessly placed plaintiff in situations to worsen his condition.").

[59] <u>Id.</u> at 2.

disability-based discrimination." *See* <u>Dark v. Potter</u>, 293 F. App'x 254, 258 (5th Cir. 2008).

Plaintiff does not contend that his alleged disability played a role in his 2009 suspension, and concedes that he has no proof to support his allegation that it was a factor in his removal.[60] Accordingly, his claims of disability discrimination based on his suspension and removal are dismissed.

An employer's failure to make reasonable accommodations of an employee's disability constitutes discrimination under the Rehabilitation Act. <u>Sapp v. Donohoe</u>, 539 F. App'x 590, 596 (5th Cir. 2013). "When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." <u>E.E.O.C. v. Agro Distrib.</u>, 555 F.3d 462, 471 (5th Cir. 2009).[61] "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the [Rehabilitation Act]." <u>Loulseged v. Akzo Nobel Inc.</u>, 178 F.3d 731, 736 (5th Cir. 1999). However, "an employer cannot be found to have

---

[60] Document No. 21, ex. 4 at 211-212.

[61] Although <u>Agro Distrib.</u> and several other cases cited herein involve the Americans with Disabilities Act ("ADA"), the Fifth Circuit has held that the language of the ADA generally tracks that of the Rehabilitation Act, and that jurisprudence interpreting either section applies to both. <u>Kemp v. Holder</u>, 610 F.3d 231, 234 (5th Cir. 2010).

violated the [Rehabilitation Act] when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer." Id.

The summary judgment evidence is that Plaintiff provided USPS with two doctors' notes, one a "Release to Work/School Permit" form from a neighborhood family practice doctor, which stated Plaintiff could return to work "no more than 8 hrs a day," but included no diagnosis, no duration for such limitation, and no explanation for it. The second doctor's note was on a prescription form from a Baylor College of Medicine specialist, which stated that Plaintiff "has spasmodic dysphonia. Increased stress [illegible] this condition. If possible no more than 8 hours shifts could help the condition."[62]   USPS responds that it sought from Plaintiff clarification of these statements to determine the extent of Plaintiff's limitations and to formalize his request for accommodations, and asked Plaintiff to fill out further paperwork.[63] There is no summary judgment evidence that USPS's request was

_____

[62] Document No. 21, ex. 1 at 123.

[63] Id., ex. 5 ¶ 2 ("On August 7, 2009, I asked Larry Callies to complete paperwork for a light duty assignment. I presented Mr. Callies with this paperwork because there was an ambiguity in certain medical documentation that Mr. Callies had submitted to USPS management. One of the doctors' notes submitted by Mr. Callies seemed to be merely a recommendation that he only work eight hours a day, while the other took the form of a command. I hoped that the additional light duty documentation, completed by Mr. Callies and his doctor, would help resolve this ambiguity and formalize any request for accommodation. Mr. Callies, however, did not complete the light duty paperwork, as requested.").

unreasonable, especially given that one doctor's note provided no information as to why Plaintiff was limited to eight hours of work per day, and the second doctor's note--which provides a diagnosis--rather ambiguously states, "If possible no more than 8 hours shifts could help the condition."

Plaintiff summarily rejected entering into the 'informal, interactive process' to determine an appropriate reasonable accommodation, responding that he could not fill out the requested paperwork because under his interpretation of the union agreement, he was not an "ill or injured" employee.[64]  Plaintiff did not at that time offer to provide USPS with any further medical information regarding his condition or explanation of its limitations upon him, nor is there any evidence of record that he later provided such information.  When Plaintiff was subsequently asked to work overtime, he walked off the job in violation of the Employee and Labor Relations Manual, resulting in his termination.[65] Because Plaintiff refused to provide the requested clarifying and explanatory information, and because his termination for failure to follow the Employee and Labor Relations Manual effectively ended the accommodation discussion, USPS cannot be held liable for failing to provide reasonable accommodations.  *See* Griffin v.

---

[64] *Id.*, ex. 1 at 259.

[65] As explained above, Plaintiff concedes that he has no evidence that his disability was a factor in his removal.

United Parcel Serv., Inc., 661 F.3d 216, 224 (5th Cir. 2011) (no
reasonable juror could conclude defendant was unwilling to, in good
faith, participate in interactive process to reasonably accommodate
plaintiff where, after defendant informed plaintiff that based on
the information he provided it was unable to conclude he was
entitled to the requested accommodation, plaintiff voluntarily
retired rather than provide additional information about his
illness).

C.   Section 1981

Plaintiff's claim of discrimination under 42 U.S.C. § 1981
fails, as Title VII and the ADEA provide the exclusive remedies for
employment discrimination claims brought by federal employees. *See*
Sapp v. Potter, 413 F. App'x 750, 753 (5th Cir. 2011) (affirming
dismissal of postal employee's § 1981 claim because it was
preempted by Title VII); Paterson v. Weinberger, 644 F.2d 521, 524
(5th Cir. 1981) (the ADEA is the exclusive remedy for age
discrimination in federal employment).

D.   Title VII Discrimination and Retaliation

Plaintiff alleges in his Complaint that USPS retaliated
against him for his EEO activity with acts ranging "from overtime
work to suspensions,"[66] and that Defendant disciplined Plaintiff

---

[66] Document No. 1 at 2.

more harshly than other employees in retaliation for his EEO activity.[67] Plaintiff further alleges that Defendant "scrutiniz[ed] plaintiff more closely than other comparable employees, ostraciz[ed] plaintiff, while attempting to construct a pretextual reason for firing plaintiff, verbally abus[ed] and accost[ed] plaintiff while attempting to provoke plaintiff enough to create a pretext for firing plaintiff," and ultimately terminated Plaintiff, all because of Plaintiff's race and in retaliation for his prior EEO activity.[68]   However, Plaintiff's EEO complaints allege retaliation based only on his 2009 suspension,[69] and race discrimination and retaliation based only on his termination.[70] Because Title VII plaintiffs must exhaust their administrative remedies before filing suit in federal court, and Plaintiff does not argue that any additional claims of retaliation or race discrimination could "reasonably be expected to grow out of" his EEO complaints, the Court may properly consider only Plaintiff's claim of retaliation based on his 2009 suspension, and his claims

---

[67] Id. at 6.

[68] Id. at 7.

[69] Document No. 21, ex. 1 at 00043.

[70] Id., ex. 1 at 00068.  Plaintiff's EEO complaints do not specify whether his retaliation claims are brought under Title VII or the ADEA.   Because Plaintiff failed to exhaust his administrative remedies on his ADEA claims, the Court will examine his retaliation claims under Title VII.

of race discrimination and retaliation based on his termination. *See* Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006).

### 1.   Title VII Standard

Title VII proscribes an employer from refusing to hire, discharging, or otherwise discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment" because of that individual's race.   42 U.S.C. § 2000e-2(a)(1).  The statute also provides that it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  Id. § 2000e-3.

"The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff."  Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004) (quotations omitted). Intentional discrimination can be established through either direct or circumstantial evidence.  Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001).  If no direct evidence is presented, the claims must be analyzed using the framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973).  Bryan v. McKinsey & Co., Inc., 375 F.3d 358, 360 (5th Cir. 2004).

Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing, by a preponderance of the evidence, a *prima facie* case of discrimination. *See* <u>Wallace</u>, 271 F.3d at 219. Once the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. <u>Id.</u> If the employer sustains its burden, the presumption of discrimination is dissolved and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative). <u>Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.,</u> 482 F.3d 408, 411-12 (5th Cir. 2007).

2.   <u>2009 Suspension</u>

To demonstrate a *prima facie* case of retaliation, Plaintiff must show that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal link existed between the protected activity and the adverse action. <u>Gee v. Principi</u>, 289 F.3d 342, 345 (5th Cir. 2002).

Plaintiff has not demonstrated a *prima facie* case because his 2009 suspension was not an adverse employment action. In the

retaliation context, an adverse employment action is one that is
"materially adverse," meaning that the action "well might have
dissuaded a reasonable worker from making or supporting a charge of
discrimination." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 126 S.
Ct. 2405, 2415 (2006) (internal quotation marks and citation
omitted). Plaintiff's 2009 suspension was a "paper suspension" and
involved no time off and no loss of pay.[71]  Plaintiff provides no
evidence that he suffered any negative consequence from this
suspension of such a nature as to deter a reasonable worker from
making a charge.  To be sure, the suspension was of no deterrence
to Plaintiff, who subsequently made multiple charges of
discrimination.  In sum, Plaintiff has failed to present evidence
that his 2009 suspension was a materially adverse employment
action.  <u>See</u> <u>DeHart v. Baker Hughes Oilfield Operations, Inc.</u>, 214
F. App'x 437, 442 (5th Cir. 2007) (written warning was not
materially adverse employment action where there were colorable
grounds for the warning and it "did not in fact dissuade a charge
of discrimination"); <u>Stewart v. Loftin</u>, Civ. A. No. 2:06cv137-KS-
MTP, 2008 WL 3086760, at *7 (N.D. Miss. Aug. 4, 2008)
(administrative leave with pay was not materially adverse action
where plaintiff did not claim that she suffered harm due to the
leave).

------

[71] Document No. 21, ex. 1 at 00066-67.

Because Plaintiff has failed to demonstrate a *prima facie* case, it is not necessary to reach the remaining steps of the <u>McDonnell Douglas</u> inquiry. However, the Court observes that USPS has provided a legitimate non-discriminatory reason for the 2009 suspension--Plaintiff took an unauthorized break while on overtime. In his Response to the Motion for Summary Judgment, Plaintiff does not advance any argument that USPS's reason was pretextual.

3.   <u>Removal</u>

Plaintiff alleges that his removal was issued on the basis of retaliation and racial discrimination.   Given that removal is generally an adverse employment action (although here USPS argues to the contrary because Plaintiff was reinstated by the arbitrator), the Court will assume without deciding that Plaintiff has demonstrated a *prima facie* case, and will turn to the second step of the <u>McDonnell-Douglas</u> burden-shifting framework.

USPS has demonstrated a legitimate, non-discriminatory reason for terminating Plaintiff, namely, that he refused to obey management's instructions to work overtime, and instead clocked out and went home.   USPS cited this failure to follow instructions, along with Plaintiff's previous suspensions in 2008 and 2009, as the legitimate and non-discriminatory reason for his removal.[72]

---

[72] *See* <u>id.</u>, ex. 1 at 00253-54.

In Response to the Motion for Summary Judgment, Plaintiff argues that Debra Sardelich, who is white, was not asked to work overtime on September 8, 2009, even though she had less seniority than Plaintiff.[73]   However, the uncontroverted summary judgment evidence is that Felder believed that Sardelich was not available for overtime work that day because she had thirty minutes of pre-approved annual leave.[74]   Plaintiff has failed to raise a genuine issue of material fact that USPS's reasons for his removal were pretextual.

E.   ERISA

Plaintiff alleges that USPS terminated him with the intent to deprive him of his retirement benefits in violation of ERISA.   *See* 29 U.S.C. § 1140.   ERISA does not apply to employee benefit plans that are governmental plans, such as USPS's retirement plan.   *See* id.   §§ 1002(32), 2003(b).   Accordingly, Plaintiff's ERISA claim is dismissed.

IV.   Order

For the foregoing reasons, it is

---

[73] Document No. 29 at 7 of 22.

[74] Document No. 21, ex. 1 at 00232; id., ex. 4 at 140; id., ex. 5 ¶ 4.

24

ORDERED that Defendant United States Postal Service's Motion for Summary Judgment (Document No. 21) is GRANTED.  Plaintiff Larry Callies's age discrimination claim is dismissed without prejudice for failure to exhaust administrative remedies, and his remaining claims are dismissed on the merits.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 25TH day of August, 2014.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE